Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel to Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
415-325-5900
blgibbs@wefightpiracy.com

*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS LLC,<br><br>Plaintiff,<br>v.<br><br>DAVID TRINH,<br><br>Defendant. | **No. 3:12-CV-02393-CRB**<br><br>**PLAINTIFF'S MOTION FOR LEAVE TO FILE A MOTION FOR RECONSIDERATION OF THE COURT'S ORDER REQUIRING PLAINTIFF TO POST AN UNDERTAKING** |

**INTRODUCTION**

On November 9, 2012, this Court issued an Order requiring Plaintiff to post an undertaking in the above-captioned case. (ECF No. 23.) Plaintiff, by and through its undersigned counsel, hereby submits this Motion for Leave to File a Motion for Reconsideration of Court's Order Requiring Plaintiff to Post an Undertaking.

**LEGAL STANDARD**

When requesting leave to file a Motion for Reconsideration, the N.D. Local Rules require one of three things to be satisfied, including, "A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." (Local Rule ["L.R."] 7-3(b)(3). "Reconsideration of a prior ruling is appropriate…where the initial decision was clearly erroneous or manifestly unjust." *Brown v. Kinross Gold, USA*, 378 F.

Supp. 2d 1280, 1288 (D. Nev. 2005) (*Citing Nunes v. Ashcroft*, 375 F. 3d 805, 807-808 (9th Cir. 2004).

## ARGUMENT

### I. A FAILURE TO ADDRESS EACH CLAIM IN A COMPLAINT WITH RESPECT TO A MOTION TO POST AN UNDERTAKING IS A MANIFEST ERROR OF LAW

Plaintiff states three claims in its Amended Complaint: (1) Copyright Infringement, (2) Contributory Infringement, and (3) Negligence. (ECF No. 13.) In finding that "Plaintiff's current evidence of infringement is weak," the Court failed to discuss, *or even mention*, Plaintiff's contributory infringement claim. (ECF No. 23 at 2) (discussing Plaintiff's direct infringement claim and negligence claims, but failing to analyze Plaintiff's contributory infringement claim). The word "contributory" does not appear in the Court's order. (*Id.*) There is literally *no* analysis as to whether Defendant had a reasonable possibility of defeating this claim. (*Id.*)

Correspondingly, there is simply no lawful basis for requiring Plaintiff to post security with respect to this claim. *See Gabriel Tech. Corp. v. Qualcomm Inc.*, No. 08-1992 MMA, 2010 WL 3718848, at *14 (S.D. Cal. Sept. 20, 2010) (extensively analyzing *each* of the plaintiff's claims and concluding the imposition of a bond for costs and fees was appropriate where *each* of plaintiff's claims was unlikely to succeed), *Pittman v. Avish P'ship*, No. 10-1390 JST, 2011 WL 9160942, at *8 (C.D. Cal. June 2, 2011) ("Here, Plaintiff's *claims* rest on allegations that she visited Defendants' Super 8 Motel with Pittman ….") (emphasis added), and *Kourtis v. Cameron*, No. 08-55659, 2009 WL 4885054, at **1 (9th Cir. Dec. 2, 2009) (analyzing the appropriateness of a costs bond with respect to the only remaining claim).

It is no wonder that the Court did not analyze the Defendant's likelihood of success in defeating Plaintiff's contributory infringement claim. The Defendant did not either. (*See generally* ECF No. 20.) In his motion to post an undertaking, the word "contributory" appears only once, and

its appearance occurs not in the argument portion of Defendant's brief, but in the section entitled, "Litigation History and Statement of Facts." (ECF No. 20 at 9.) Here is the full paragraph of the Defendant's mention of contributory infringement.

> Plaintiff's complaint further alleges that the infringement was committed via a particular BitTorrent client – Azureus 4.7.0.2. Mr. Trinh has stated that he does not have any such program installed on any of his computers, and did not have any such program on the date in question. Trinh Dec. at ¶ 5-6. Indeed, Mr. Trinh's declaration goes even further, noting that he doesn't *believe* he has *any* BitTorrent client installed on his machine and that he doesn't *believe* he has ever used BitTorrent for any purpose, legal or illegal. The sum of Mr. Trinh's declaration is clear: he did not share Plaintiff's video via BitTorrent and is therefore not liable for either direct or contributory infringement.

(*Id.*) Thus, *literally* the only statement Defendant makes in favor of enjoying a reasonable possibility of prevailing on Plaintiff's contributory infringement claim is, in essence, "I *believe* I didn't do it." (*Id.*) Of course, an entirely superficial denial of liability on information and belief does not establish a likelihood of success, or else there would be no limiting principle to the showing.

Lest the Court be inclined to bailout Defendant's bungled motion by bootstrapping Defendant's citation to *SBO Pictures, Inc. v. Does 1-3036* into an argument on contributory infringement, Plaintiff would state the following: First, the underlying complaint in *SBO Pictures, Inc. v. Does 1-3036* contained a single claim—direct infringement. Thus, Defendant's citation to an order analyzing the complaint has absolutely no relevance to a contributory infringement claim. Second, it is Defendant's burden—not the Court's—to establish a possibility of success on the merits with respect to Plaintiff's contributory infringement claim. If Defendant failed to *attempt* to do so (as he clearly did here) then that should end the Court's analysis. Finally, to the extent that the relationship between an account holder and an infringer is imperfect, this so-called imperfection has no bearing on a contributory infringement claim. After all, "[T]he concept of contributory infringement is merely a species of the broader problem of identifying the circumstances in which it

is just to hold one individual accountable for the actions of another." *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984). The fact that someone else *may* have used Defendant's Internet connection for illicit purposes does not change the facts that: 1) someone indisputably used Defendant's Internet connection for illicit purposes; and 2) Defendant may be held accountable for those actions regardless of whether it was him—assuming that Plaintiff can prove the requisite elements of contributory infringement (none of which Defendant has challenged).

Defendant's failure to challenge Plaintiff's contributory infringement claim renders the Court's threat regarding dismissal to be erroneous. At worst, the Court should dismiss Plaintiff's direct infringement claim without prejudice and allow Plaintiff's contributory infringement and negligence (discussed below) claims to proceed. More appropriately, the Court should simply vacate its order requiring Plaintiff to post an undertaking. After all, if Defendant prevails on Plaintiff's direct infringement claim, but Plaintiff prevails on its contributory infringement claim, there is no basis for Defendant to claim costs and fees from Plaintiff and thus no basis for requiring an undertaking. The Court can take judicial notice of the fact that Defendant failed to argue contributory infringement in his motion requiring Plaintiff to post an undertaking.

## II. THE COURT CANNOT DISMISS PLAINTIFF'S NEGLIGENCE CLAIM FOR FAILURE TO POST AN UNDERTAKING BECAUSE THE DEFENDANT DID NOT IDENTIFY ANY RECOVERABLE COSTS ASSOCIATED WITH DEFENDING THIS CLAIM

The second clear error associated with the order was that it threatened to dismiss Plaintiff's negligence claim for failure to post security with respect to fees and costs that are ultimately unrecoverable with respect to negligence claims. As to attorney's fees, the Court "reject[ed] Plaintiff's arguments that attorneys' fees are inappropriate here." (ECF No. 23 at 4.) Yet, it seems axiomatic to say that attorney's fees are not awardable for prevailing on a negligence claim. Simply because a copyright infringement claim is included in a complaint *does not* mean that every claim is

transformed into a claim for which fees are awardable. As for costs, Plaintiff continues to ask the Court to review the Local Rules. Every one of Attorney Ranallo's anticipated costs are expressly listed as unrecoverable in this District's Local Rules. There is simply no way around this fact. Although the Court notes that district courts may award otherwise non-taxable costs, including those that lie outside the scope of § 1920, under § 505, the Court *does not* have the authority to award non-taxable costs with respect to claims that do not arise under § 505. At worst, the Court should dismiss the direct infringement claim and allow Plaintiff to proceed with its contributory infringement and negligence claims.

With respect to the Court's conclusory description of Plaintiff's negligence claim as, "deeply flawed," Plaintiff would note the following. The Court notes Defendant's citation to *AF Holdings v. John Doe and Josh Hatfield, "*dismissing similar negligence claim and explaining that defendant had no duty to prevent infringement of plaintiff's copyrighted works." (*Id.)* Unlike the situation in *AF Holdings v. John Doe and Josh Hatfield*, however, negligence in the instant action is merely an *alternative* theory of Defendant's liability. (*See*, generally, ECF No. 13.) Further, whether Plaintiff has a reasonable probability of judgment in his favor with respect to the negligence claim is a fact-specific inquiry, considering that such claims have survived a Motion to Dismiss in the past; while some negligence claims have fallen, others have been determined to be able to withstand a motion to dismiss. *See* e.g., *Lightspeed Media Corporation v. World Timbers Inc*., CV 2012-053230 (Sup. Ct. Ariz., e-filed November 6, 2012); *Liberty Media Holdings, LLC v. Felix Latimore*, *et al*., No. 11-cv-00040 (S.D. Cal. July 11, 2011), ECF No. 9 (recommending the granting of a motion for default judgment against a Defendant accused of negligence); *AF Holdings LLC v. John Doe*, No. 12-1519 (S.D. Cal. July 12, 2012), ECF No. 4 at 6 ("Accordingly, Plaintiff's negligence cause of action could withstand a motion to dismiss.").

Plaintiff thus respectfully asserts that it is premature for the Court to conclude that Defendant would have a reasonable probability of judgment in his favor with respect to the negligence claim. Plaintiff trusts that the Court will approach briefing on this matter with an open mind.

## III. A CITATION TO AN UNRELATED CASE HAS NEVER BEEN HELD TO ESTABLISH A REASONABLE PROBABILTIY OF SUCCESS ON THE MERITS

In its response to Defendant's motion to post an undertaking, Plaintiff noted that Defendant's only showing with respect to Plaintiff direct infringement claim was the possibility that an IP address holder may not be the same person as an infringer. Plaintiff understands that the Court has ruled with respect to Plaintiff's direct infringement claim and may be unwilling to consider further argument on the matter. However, if additional argument can prevent an unnecessary appeal then the interests of judicial economy would favor a rebuttal to the Defendant's so-called showing of a reasonable probability of success on the merits of Plaintiff's direct infringement claim.

In its Order, the Court asserted that "Defendant has…shown a reasonable probability that he will obtain a judgment in his favor. He has done so by noting that Plaintiff's current evidence of infringement is weak." (ECF No. 23 at 2.) The language cited by the Court in support of this proposition, from *SBO Pictures v. Does 1-3036*, stated that "As many courts have noted, however, the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes." (*Id.)* The *SBO Pictures* holding did not make this statement in the context of discounting the Plaintiff's eventual probability of success in the case. Indeed, the holding cited by Defendant was on the issue of **whether Plaintiff in the case should be granted leave to take expedited discovery on all 3,036 Doe Defendants.** *SBO Pictures, Inc. v. Does 1-3036*, No. 11-4220 SC (N.D. Cal Nov. 30, 2011.) In order to determine whether leave should be granted, Honorable Judge Conti turned to the four factors enumerated in *Columbia Ins. Co. v. seescandy.com:* "For leave to conduct discovery to identify a Doe defendant, the moving party must:

(1) identify the defendant with enough specificity to allow the Court to determine whether the defendant is a real person or entity who could be sued in federal court; (2) recount the steps taken to locate the defendant; (3) show that its action could survive a motion to dismiss; and (4) file a request for discovery with the Court identifying the persons or entities on whom discovery process might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information. (*Id.)* (*Citing Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 578-580 (N.D. Cal 1999)). The Court was "satisfied that Plaintiff has met the first, second, and fourth Columbia Insurance factors." (*Id.)* However, the Court "[found] that Plaintiff has not shown that the Complaint could survive a motion to dismiss ***based on improper joinder.***" (*Id)* (Emphasis added.) Thus, the ***entirety*** of the *SBO* Court's discussion in its holding involved analyzing whether ***joinder was appropriate as to all 3036 defendants.*** The very language cited by Defendant, and by this Court, appears in the following context:

> Here, the Court finds that even if [Federal Rule of Civil Procedure] Rule 20 were satisfied, other concerns weigh against joinder. First, joinder has the potential to produce an unfair result for some, if not many, Doe Defendants. Plaintiff defines Doe Defendants as the ISP subscribers whose internet connection was allegedly used to pirate the Motion Picture. Compl. ¶ 5. ***As many courts have noted, however, the ISP subscriber to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes***

(*Id)* (Emphasis added.) The emphasized language—which has been cited by this Court as standing for the proposition that Defendant has a reasonable probability of obtaining judgment in his favor—was thus an explanation of why joinder of all 3,036 defendants was improper, a dimension which is obviously not present in the instant case. In fact, though the *SBO* Court severed Does 2-3036 from the action for improper joinder, the Court ***granted*** Plaintiff leave to take expedited discovery with respect to the first Doe Defendant (*Id.)* The Court's grant of leave in *SBO* is thus, furthermore, an assertion that "the action could survive [after severed] a motion to dismiss," the *Columbia Ins.* factor which the Court asserted needed to be met for leave to be granted. (*Id.)*

As shown above, the Court's holding in *SBO* simply does not stand for the proposition that the Defendant, and this Court, have attributed to it. The only proposition it could be properly characterized to stand for is that claims such as the one in the instant case can survive a motion to dismiss; this obviously cannot support the proposition that Defendant has a reasonable probability of judgment in his favor in the instant action, and could even be said to contradict that proposition.

Indeed, the Court's assertion that Defendant has a reasonable probability of judgment in his favor on Plaintiff's direct infringement claims is further rebuffed by the fact that Plaintiff has won judgment—in the amount of $153,770.00—against a different defendant on the basis of precisely the same claims as those that Plaintiff alleges in the instant action. *See AF Holdings v. Darryl Lessere*, No. 12-cv-22156-UU (S.D. Fla. October 9, 2012). Though the judgment was a default judgment, the claims asserted in Plaintiff's Complaint necessarily had to meet the legal standard for default judgment in order for such judgment to be awarded in favor of Plaintiff.

If the facts in the complaint are sufficient to establish liability, then the court must conduct an inquiry to ascertain the amount of damages. *PETMED EXP., INC. v. MedPets. Com, Inc.*, 336 F.Supp. 2d. 1213, 1217 (S.D. Fla. 2004); *see also Arista Records, Inc. v. Beker Enter., Inc.*, 298 F.Supp.2d 1310, 1312 (S.D. Fla. 2003). Damages may be awarded if the record adequately reflects the basis for the award via a hearing or a demonstration of detailed affidavits establishing the necessary facts. *Adolph Coors Co. v. Movement Against Racism and The Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985).

Given that the Court in *AF Holdings v. Lessere* found sufficient factual basis for establishing liability, it is difficult to properly assert that Defendant in the instant action has a reasonable probability of judgment. On the foregoing grounds, Plaintiff respectfully asserts that this Court's Order was clearly erroneous, and should be vacated.

## IV. IMPOSITION OF AN UNDERTAKING IN THE INSTANT ACTION WOULD SET A PRECEDENT THAT IS UNDESIRABLE FOR THE STATE OF CALIFORNIA[1]

As previously mentioned, parties who are situated similarly to Plaintiff would have no way to obtain recompense for harms committed online if IP address-based allegations were disallowed. Though the Court's Order did not technically disallow Plaintiff's IP address-based allegation in the instant action, the Order demands Plaintiff to post an enormous sum of money before even proceeding with its case. (ECF No. 23 at 4.)

The logic of this Order, when applied universally to any plaintiff making an IP address-based allegation, would make it impossible for all but the ultra-wealthiest of plaintiffs to obtain recompense for harms committed online; such a result would defy the spirit and intent of the Copyright Act. More ominously, such a result would cast a dark shadow upon the flow of online commerce with respect to California residents. If one imagines a world where any out-of-state organization which conducts business online would have to post an $48,000 undertaking before litigating harms caused online by a California resident (for which the allegations are based upon an IP address), one can easily infer that many organizations might simply choose to exclude California residents from accessing their businesses—especially since IP addresses represent the only identifier in the mostly lawless, anonymous realm of the Internet. Businesses wishing to relieve themselves of this heavy burden could easily do so by blocking any IP addresses that originate in California from accessing their websites.

Further, the proposition that any non-California-based copyright holder wishing to pursue California digital infringers would be required to post a $48,000 bond before proceeding in an

[1] Though this case is in federal court, this Court has based its Order, in part, on a state statute, namely Cal. Code Civ. Proc. § 1030. (*See* ECF No. 23 at 1.) As such, plaintiffs suing California residents for federal claims would have to contend with this Court's interpretation of the statute. Thus, the Court's Order would have a direct impact on the forum state, even though the case is in federal court.

infringement action runs entirely contrary to the obligations of the United States under international treaties. Imagine the reaction of American copyright holders if they were required to post a $48,000 bond before proceeding against digital infringers in the European Union—such a scenario would spark a trade war. The United States is supposed to demonstrate leadership in promoting the rule of law. This Court's Order is inapposite to that principle.

Aside from the potential financial harms, there is also the significant legal contradiction embodied by the Court's desire to bar, for all practical purposes, legitimate claims under the Copyright Act. In requiring Plaintiff here to post such a burdensome undertaking, the Court unilaterally reads into the act a requirement that "Plaintiffs outside of California, when alleging online infringement of their copyright by a California resident, must post an undertaking of [roughly] $48,000." This Court may retort that only allegations of online copyright infringement that are *based on IP addresses* would be subject to this hypothetical reading. Plaintiff would respectfully ask the following of this Court: if not on the basis of IP addresses, then how else might Plaintiff, and other similarly situated copyright holders, assert their rights in the face of online infringement, in the face of millions of individuals anonymously downloading copyrighted content in direct violation of federal law? *See Metro Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 928-29 (2005) (citing the concern that "digital distribution of copyrighted material threatens copyright holders as never before.").

**CONCLUSION**

For the reasons stated herein, Plaintiff respectfully requests that the Court vacate its Order Granting Motion to Post Undertaking.

///

///

///

PRENDA LAW INC.,

**DATED: November 14, 2012**

By: /s/ Brett Gibbs

Brett L. Gibbs, Esq. (SBN 251000)
Of Counsel for Prenda Law Inc.
38 Miller Avenue, #263
Mill Valley, CA 94941
blgibbs@wefightpiracy.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 14, 2012, all individuals of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document, and all attachments and related documents, using the Court's ECF system, in compliance with Local Rule 5-6 and General Order 45.

/s/ Brett L. Gibbs
Brett L. Gibbs, Esq.