Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant David Trinh

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., | Case No. 3:12-cv-02393-CRB |
| Plaintiff, | |
| v. | **NOTICE OF MOTION AND MOTION FOR COSTS AND ATTORNEY FEES** |
| DAVID TRINH | **Honorable Judge Charles Breyer** |
| Defendants. | **May 10, 2013th at 10:00 a.m.** |
| | **Courtroom 6 – 17th Floor** |

**NOTICE OF MOTION AND MOTION**

1

2      PLEASE TAKE NOTICE that on May 10, 2013at 10:00 before the Honorable   Charles

3   Breyer in Courtroom 6 -17th Floor of the United States District Court for the Northern District of

4   California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, CA

5   94102.  Defendant David Trinh will and hereby does move for an order awarding attorney's fees

6   and expenses.

7      Defendant brings this motion pursuant to 17 U.S.C. §505 on the grounds that Defendant is

8   the prevailing party on each of the relevant copyright claims.  Defendant's motion is based on this

9   notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits

10  attached thereto, and all other papers filed and proceedings held in this action.

11

12

13

14   DATED: March 22, 2013               Respectfully Submitted,

15                                        NICHOLAS RANALLO, ATTORNEY AT LAW

16

17                                        By:_____/s/ Nicholas Ranallo
                                          Nicholas Ranallo (Cal Bar #275016)
18                                        Attorney for David Trinh
                                          371 Dogwood Way,
19                                        Boulder Creek, CA 95006
                                          P: 831.703.4011
20                                        F: 831.533.5073
                                          nick@ranallolawoffice.com
21

22

23

24

25

26

27

28

1
2
3
4

Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant David Trinh

5
6
7

UNITED STATES DISTRICT COURT

8

FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
10

AF HOLDINGS, LLC.,

Case No. 3:12-cv-02393-CRB

11

Plaintiff,

12

v.

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR
ATTORNEY FEES AND COSTS
PURSUANT TO 17 USC §505.**

13

DAVID TRINH

14
15

Defendants.

16
17
18
19
20
21
22
23
24
25
26
27
28

1

1

**TABLE OF CONTENTS**

2

3   I.       INTRODUCTION...............................................................................................2

4            A.    AF Holdings and Prenda Law's Litigation Campaign – Recent Developments.....2

5            B.    Procedural History of the Instant Case...................................................7

6

7   II.      LEGAL AUTHORITY.......................................................................................8

8

9   III.     ARGUMENT

10           A.    Mr. Trinh is the Prevailing Party.........................................................9

11           B.    Relevant Case Law Supports an Award of Costs and Attorney Fees.....................9

12                 1.    Frivolousness.........................................................................10

13                 2.    Motivation............................................................................10

14                 3.    Objective Unreasonableness of Factual or Legal Arguments....................12

15                       a.    Plaintiff has Failed to Conduct an Adequate Factual Investigation

16                             Prior to Bringing its Copyright Infringement Claims.....................12

17                       b.    Plaintiff's Negligence Claim is Fatally Defective and Has Been

18                             Repeatedly Rejected........................................................13

19                 4.    Need in Particular Circumstances to Advance Considerations of

20                       Compensation and Deterrence................................................14

21                 5.    The Degree of Success Obtained.................................................16

22           C.    Defendant Has Incurred $8425 in Reasonable Attorney's Fees...........................16

23                 1.     Reasonable Hourly Rate......................................................16

24                 2.    Hours Reasonably Expended....................................................18

25

26   IV.     CONCLUSION.................................................................................................18

27

28

**TABLE OF AUTHORITIES**

*AF Holdings v. Doe,* 0:12-cv-02687-RHK-JJG (D. Minn., November 29, 2012).........................3

*AF Holdings v. Botson,* 2012 WL 5426091 (N.D. Cal. Nov. 6, 2012)............................12

*AF Holdings v. Botson,* 2012 WL 4747170 (N.D. Cal. Oct. 3, 2012)............................13

*AF Holdings v. Hatfield,* 2013 WL 97755 (N.D. Cal. Jan 7, 2013)................................12

*AF Holdings v. Hatfield,* 2012 WL 3835102 (N.D. Cal. Sept. 4, 2012)........................13

*Assessment Technologies of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 437 (7th Cir. 2004)........14

*Berkla v. Corel Corp.,* 290 F.3d 983 (9th Cir. 2002)...........................................8

*Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 604 (2001)...........................................................9

*Fogerty v. Fantasy Inc.,* 510 U.S. 517 (1994)................................................8,9

*Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d 1213, 1230 (9th Cir. 2008).........16

*HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005)...............16-17

*Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994)........................................9, 16

*Liberty Media v. Tabora,* 2012 WL 2711381 (S.D.N.Y. July 9, 2012)..........................13

*United States v. Standard Oil Co. of Cal.,* 603 F.2d 100, 103 (9th Cir. 1979)..................8

*Wall Data Inc., v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769, 787 (9th Cir. 2006)............16

1

## I.     INTRODUCTION

2

3  **A.     AF HOLDINGS AND PRENDA LAW'S LITIGATION CAMPAIGN – RECENT DEVELOPMENTS**

4

5      The contours of AF Holdings/Prenda Law's mass BitTorrent copyright litigation campaign were outlined at length in Defendant's Motion for an Undertaking (ECF No. 20 at 6-7).[1]  As noted

6  previously, Plaintiff and its counsel have brought hundreds of copyright lawsuits, against tens of

7  thousands of putative does, based on the generalized allegation that the ISP subscriber has

8  infringed its copyrights by sharing a particular work via BitTorrent.  Just over a year ago, on

9  February 24, 2012, Prenda Law was forced to admit that, despite having filed suit against nearly

10  15,000 putative "Does" and collecting innumerable settlements, they had not ever actually served

11  a single defendant.  The reason for their reluctance was simple – an IP address is simply not

12  sufficient to identify the actual infringer of its copyrights.  As described in Defendant's Motion for

13  an Undertaking, this evidentiary insufficiency is well known, and has been explicitly recognized

14  by AF Holdings and its prior counsel herein.  See ECF No. 20 at 12-14.

15      Following the revelation above, Prenda Law and AF Holdings concluded that they would

16  need to begin naming and serving individual defendants in order to keep its litigation campaign

17  moving forward, notwithstanding the objective weakness of its claims.  Mr. Trinh is one of the

18  first defendants that was actually served with a complaint alleging copyright infringement

19  following this decision, though numerous other suits followed.  Prenda Law/AF Holdings decision

20  to "blindly serve" individual defendants has since led to increased scrutiny of its claims, its

21  litigation practices, and its investigative process.  This scrutiny has resulted in multiple federal

22  judges expressing concerns about bad faith, litigation misconduct, and fraud upon the court.  The

23  scrutiny has likewise led to the apparent collapse of AF Holdings' litigation campaign.  These

24  developments are relevant to the Court's inquiry for the present motion, and will be summarized

25  (somewhat) briefly below.

26

27  ----

[1] All references to page numbers for documents on the ECF system will refer to the number assigned by the ECF system on the top of the page, and not to the document's internal pagination.

28

1    AF Holdings' ongoing collapse was set in motion in late November, 2012, when an

2    individual named Alan Cooper, through his attorney, filed a letter in several AF Holdings cases

3    pending in the District of Minnesota.  See, e.g. *AF Holdings v. Doe,* 0:12-cv-02687-RHK-JJG (D.

4    Minn., November 29, 2012).  A copy of this letter is annexed hereto as Exhibit A.      This letter

5    alleged that Mr. Cooper was concerned that his name was being used, without his consent, in

6    connection with AF Holdings and its BitTorrent litigation campaign.  Indeed, the assignment in

7    the instant case is purportedly signed by Mr. Cooper, on behalf of AF Holdings.  See ECF 13-2.

8    Mr. Cooper subsequently executed an affidavit containing substantially identical allegations.  A

9    copy of this affidavit, filed in Central District of California Case No. 2:12-cv-05709-ODW-JC is

10   annexed hereto as Exhibit B.

11   AF Holdings has been wholly unwilling or unable to offer any evidence to refute Mr.

12   Cooper's claim of identity theft, or to produce the actual "Alan Cooper" that it claims signed the

13   documents.  Although it was temporarily able to avoid answering the difficult questions, its

14   evasion would not be allowed for long.

15   The house of cards began rapidly toppling on February 7th, 2013.  On that date Judge Otis

16   Wright of the Central District of California issued a wide-ranging Order to Show Cause Re: Rule

17   11.  A copy of this order is annexed hereto as Exhibit C.  Judge Wright had previously been

18   assigned to handle all AF Holdings and Ingenuity 13 (another "Alan Cooper" entity) matters that

19   were pending in the district, and thus had ample opportunity to observe AF Holdings and Prenda

20   Law's litigation conduct.  Judge Wright was not impressed with what he saw.

21   First, as noted in the instant case, Judge Wright stated that Plaintiff's process for

22   identification of a defendant in these actions is highly flawed and likely violates the "reasonable

23   investigation" requirement of Rule 11.   Judge Wright discusses Plaintiff's "investigation" and

24   determines that **"Plaintiff's 'factual analysis' cannot be characterized as anything more than**

25   **a hunch."**  Exhibit C at 6.  The Court goes on to note that "Plaintiff cannot show that [Defendant]

26   is the infringer instead of someone else, such as [The Subscriber], other members of the

27   household; family guests; or, the next door neighbor who may be leaching from the [family's]

28

Internet access.  Thus, Plaintiff acted recklessly by naming [Defendant] as the infringer based on its haphazard and incomplete investigation."  Exhibit C at 6.

In addition to the insufficiency of Plaintiff's methods for identifying the infringer, Judge Wright was likewise concerned with "Fraud on the Court."  The Court notes that

> "At the center of this issue is the identity of a person named Alan Cooper and the validity of the underlying copyright assignments.  If it is true that Alan Cooper's identity was misappropriated and the underlying copyright assignments were improperly executed using his identity, then Plaintiff faces a few problems.
>
> First, with an invalid assignment, Plaintiff has no standing in these cases.  Second, by bringing these cases, Plaintiff's conduct can be considered vexatious, as these cases were filed for a facially improper purpose.  And third, the Court will not idle while Plaintiff defrauds this institution."  Exhibit C at pg. 9.

The following day, on February 8, 2013, AF Holdings (and Ingenuity 13) began to summarily dismiss the remaining cases that could be dismissed without court intervention  and without risking liability for costs-i.e. cases in which the Defendant had neither answered or filed a motion for summary judgment.  See, e.g.  3:12-cv-02415-CRB; 3:12-cv-04982-CRB; 4:12-cv-02411-PJH, and 5:12-cv-02394-LHK in the Northern District of California, and Case Nos: 2:12-cv-01064-JAM-GGH; 2:12-cv-01066-GEB-GGH; and 2:12-cv-01075-GE-DAD in the Eastern District of California.   Indeed, there were many more such dismissals throughout the state, including a matter where the defendant had been relieved of default only days prior.  See *AF Holdings v. Trevor Noordman,* 2:12-cv-01657-GEB (E.D. Cal.)(Docket Nos. 30 & 32) annexed hereto collectively as Exhibit D.  This dismissals demonstrate an acceptance by Prenda and AF Holdings that the jig is, finally, up.

February 19, 2013 was an important day for AF Holdings and its former counsel, Brett Gibbs.  Not only was Mr. Gibbs' response to Judge Wright's Order to Show Cause due, but AF Holdings was also scheduled to attend a 30(b)(6) deposition for another case in this district (AF Holdings v. Navasca; 3:12-cv-02396) regarding, inter alia, its ownership and control.

AF Holdings deposition was first to occur, and was attended by Mr. Gibbs, as well as AF Holdings representative Paul Hansmeier.  Mr. Hansmeier testified that AF Holdings was wholly

owned by a mysterious trust with an unknown trustee and "undefined" beneficiaries.  Typical answers regarding this topic follow:

> Q:  And who does have an ownership interest in the entity?
> A:  The ownership of AF Holdings – can you please clarify your question?
> Q:  Who are the members of AF Holdings?
> A:  The membership interests of AF Holdings are held in a trust.
> Q:  And who are the beneficial owners of AF Holdings?
> A:  Well, the beneficial owner of AF Holdings is a trust...

(Hansmeier  Dep. 9:1-11)[2]

> Q:  So in my experience most trusts name at least one beneficial owner, but I believe you testified earlier today that the trust that owns AF Holdings has no beneficial owners; is that correct?
> A:  The trust that owns AF Holdings is an undefined beneficiary trust.  I would suggest that your experience is not complete when it comes to trusts...

(Hansmeier Dep. 39:10-16).

> Q: So did you make any inquiry whatever about the trust that owns AF Holdings?
> A:  Yes, I did make inquiries about the trust that owns AF Holdings.
> Q:  What were these inquiries?
> A:  Well, my first inquire was what the corporate structure of AF Holdings.  I was then informed that ---
> Q:  Pardon.  Can I stop you and I don't mean to interrupt.  Who informed you?
> A:  Mr. Lutz
> Q:  Continue.
> A:  And he informed me that the membership interest of AF Holdings are held in trust and then I asked - - following down to No. 6 – who are the beneficial owners of the trust and Mr. Lutz informed me that the trust did not have defined beneficiaries.
> Q:  Was that the extent of your inquiry about the AF Holdings?
> A:  With respect to the trust, yes."

(Hansmeier Dep. 53:17 – 54:11)

AF Holdings was also asked to explain the allegations made by Alan Cooper and confirm that Mr. Cooper was the same individual that AF Holdings claims to have executed the relevant assignments.  Mr. Hansmeier's response was not reassuring, as he essentially admitted that AF Holdings was unable to authenticate the assignment that forms the basis for the instant suit.  Specifically, Mr. Hansmeier stated that:

[2] The relevant excerpts of this deposition and the certification of the court reporter are annexed hereto as Exhibit E.

5

"If you're talking about the guy who's in Minnesota and was John Steele's former caretaker, all I can say is that AF Holdings – the only person who knows who this Alan Cooper is is John Steele and we asked Mr. Steele, is this the same guy, is this not the same guy, is there another Alan Cooper and Mr. Steele declined to respond on the basis that Mr. Cooper has sued Mr. Steele and they're actively involved in litigation." (Hansmeier Dep. 126:18-127:2).

Mere hours after Mr. Hansmeier's deposition concluded, Mr. Gibbs filed his response to Judge Wright's Order to Show Cause, discussed above. Notably, Mr. Gibbs' response stated that AF Holdings was owned by Livewire Holdings, LLC, and not by the mystery trust described by Mr. Hansmeier. See Exhibit F at pg. 2, FN1. Moreover, Mr. Gibbs stated that he was, in fact, "in-house counsel" for Livewire Holdings, despite the testimony that he sat through all afternoon.

Even more astonishingly, when pressed on the question of AF Holdings ownership, Mr. Gibbs would later state that "Mr. Steele and Mr. Hansmeier work for or with Livewire Holdings, LLC." See Exhibit G at ¶6. If Mr. Gibbs declaration is credited, Defendant must conclude that Mr. Hansmeier deliberately misstated the ownership of AF Holdings, despite working "for or with" the company that wholly owns AF Holdings. Moreover, the entirety of Mr. Hansmeier's testimony was delivered with Mr. Gibbs sitting a few feet away. The two responses simply cannot be reconciled.

On March 11, 2013, Judge Wright held his initial hearing on the Order to Show Cause re: Rule 11. Although many of the key members in AF Holdings and Prenda Law had been ordered to appear, only Brett Gibbs (former counsel herein) and the aforementioned Alan Cooper appeared. Mr. Cooper reiterated under oath that he was not affiliated with AF Holdings, and specifically denied signing AF Holdings' copyright assignments, including the assignment herein. See Ranallo Declaration at ¶21.

Mr. Gibbs testimony did little to unravel the actual ownership or control of AF Holdings, though it did shed some light on the individuals that seemingly control AF Holdings litigation decisions. In response, Judge Wright issued a supplemental order, annexed hereto as Exhibit H, again ordering a litany of individuals associated with AF Holdings and Prenda Law to appear for a

second hearing on March 29th.[3]   This order specifically noted that "The evidence presented suggests that these persons may be culpable for the sanctionable conduct...which the Court previously attributed to Brett Gibbs only.   Further**, it appears that these persons, and their related entities, may have defrauded the Court through their acts and representation in these cases."**

Following the March 11th hearing, AF Holdings filed a "Notice of Allegation" in a number of its cases in this district acknowledging the fact that Alan Cooper has denied any association with AF Holdings.   A copy of one such notice filed in this district is annexed hereto as Exhibit I. No similar "Notice" was filed in this case.   Although the Notice purports to "categorically deny" all of Mr. Cooper's allegations, AF Holdings can provide no alternative explanation for the events described above, and AF Holdings 30(b)(6) testimony described above certainly does not sound like a "categorical denial" of Mr. Cooper's allegations.

**B.     PROCEDURAL HISTORY OF THE INSTANT CASE**

The complaint in the instant matter was filed on May 10, 2012, against a single unidentified John Doe defendant, alleging that the Doe had violated the Plaintiff's copyrights via a specified IP address or, alternatively, had negligently allowed another individual to do so via the IP address.   This suit is one of dozens of suits filed by AF Holdings in this district and one of hundreds nationwide, most of which have now been dismissed by the Plaintiff.

On May 30, 2012, Plaintiff applied Ex Parte for an order authorizing early discovery to determine the ISP subscriber assigned to the IP address in question at the date/time of the alleged infringement.   On June 14, 2012, Magistrate Judge Ryu granted Plaintiff's request.   Subsequently, Plaintiff was notified that David Trinh was *the subscriber* associated with IP address 69.181.62.141 on the date in question.   Plaintiff offered no further basis for the accusation that Mr. Trinh has infringed any copyrights, nor was the accusation made upon information and belief. Nonetheless, the complaint against Mr. Trinh alternatively seeks to impose liability based upon the

---

[3] This second hearing was subsequently reset to April 2, 2013.

1   allegation that some other individual used the connection to share the work in question.  See ECF

2   No. 13 at ¶40-50.

3        On October 5, 2012, Defendant Trinh filed a motion to require an undertaking, pursuant to

4   this Court's inherent power and Cal. Code Civ. Proc. §1030.  On November 9, 2012, this court

5   granted defendant's motion, and ordered Plaintiff "to post an undertaking of $48,000 with the

6   Court within thirty (30) days of this Order, or face dismissal of the action."  ECF No. 23, at 4.

7   Plaintiff did not post the required bond and, on December 27, 2012, Defendant filed a Motion to

8   Dismiss.  On February 25th, 2013, this matter was dismissed with prejudice, though  Plaintiff

9   sought reconsideration and was granted a hearing on March 8th, 2013.  ECF No. 45 & 46.  On

10  March 8, 2013, this court rejected Plaintiff's Motion for Reconsideration and entered final

11  judgment in favor of Mr. Trinh on all causes of action.  ECF No. 48.

12       As described further herein, Defendant is the prevailing party in this action by virtue of the

13  total dismissal, with prejudice, of each of Plaintiff's claims.  Moreover, the relevant factors in this

14  case strongly support an award of attorney fees to the defendant.  As such, Defendant respectfully

15  requests an award of $8425.00 in non-taxable costs and fees, pursuant to 17 U.S.C. §505.

16

17                          **II.      LEGAL AUTHORITY**

18       An award of fees to a prevailing party may be made pursuant to a statute or rule providing

19  for the shifting of fees to the losing party.  *United States v. Standard Oil Co. of Cal.,* 603 F.2d 100,

20  103 (9th Cir. 1979).  The Copyright Act includes a fee shifting provision in 17 U.S.C. §505, which

21  states that  "In any civil action under this title, the court in its discretion may allow the recovery of

22  full costs by or against any party other than the United States or an officer thereof... the court may

23  also award a reasonable attorney's fee to the prevailing party as a part of the costs."

24       In *Fogerty v. Fantasy, Inc,* the Supreme Court held that prevailing plaintiffs and

25  defendants should be treated alike for purposes of an award of attorney fees and that any award of

26  attorney fees to a prevailing party is left to the sound discretion of the trial court.  *Fogerty v.*

27  *Fantasy Inc.,* 510 U.S. 517 (1994).  The Ninth Circuit has subsequently recognized that this

28

"evenhanded" approach is appropriate.  *Berkla v. Corel Corp.,* 290 F.3d 983 (9th Cir. 2002).

In exercising its discretion, the Court looks to various non-exclusive factors approved by the Supreme Court, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  Id. at 534, n.19.

The Ninth Circuit has adopted the factors set forth in *Fogerty,* and have often included a fifth factor, the degree of success obtained by the prevailing party.  See, e.g. *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994).

As described further below, Mr. Trinh is a prevailing party in this action, and the relevant factors strongly support an award of fees in his favor.  As such, Defendant respectfully requests that this court award attorney's fees in the amount of $8425.00,  pursuant to 17 U.S.C. §505.

## III.    ARGUMENT

### A.    MR. TRINH IS THE PREVAILING PARTY

On March 8, 2013, this court entered judgment dismissing this matter in its entirety.  As such, Mr. Trinh is unquestionably the prevailing party in this action.  He has obtained a full dismissal, with prejudice, of the copyright and negligence claims brought against him.  The dismissal in this matter is a dismissal on the merits, precluding any further suit by the Plaintiff.  This constitutes the "material alteration of the legal relationship of the parties," necessary to support an award of fees.  See *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources,* 532 U.S. 598, 604 (2001).

### B.    RELEVANT CASE LAW SUPPORTS AN AWARD OF COSTS AND ATTORNEY FEES IN THE INSTANT CASE

As noted above, the decision to award attorney's fees to a prevailing party in a copyright action is left in the discretion of the trial courts,  though the court should consider various non-exclusive factors to guide its determination.  These include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular

9

circumstances to advance considerations of compensation and deterrence." *Fogerty,* 510 U.S. 517, 534 n.19. As described further below, these an analysis of these factors weighs heavily in favor of an award in the instant case.

**1.     Frivolousness**

Although a successful defendant is not required to demonstrate frivolousness or bad faith in order to be awarded fees, the presence of either weighs in favor of such an award. Plaintiff's claims certainly approach frivolousness and the fraud allegations related to Alan Cooper are strongly suggestive of AF Holdings' bad faith. As described above, Alan Cooper, the purported signatory of the assignment in this case, has denied under oath that he executed the document. See Ranallo Declaration at ¶21 and Plaintiff's "Notice of Allegations," annexed hereto as Exhibit I. Although Plaintiff's "Notice of Allegations" seems to deny Mr. Cooper's allegations, the 30(b)(6) deposition of AF Holdings described above makes it clear that the corporation itself has virtually no knowledge about the authenticity of the assignment in this action. As Judge Wright's Order to Show Cause noted, this is problematic for a number of reasons, including that "by bringing these cases, **Plaintiff's conduct can be considered vexatious**, as these cases were filed for a facially improper purpose." Exhibit C at 9.

In addition to the frivolousness and bad faith inherent in bringing hundreds of lawsuits based on forged or fraudulent assignments, Plaintiff's claims are so lacking in legal and factual support that their continued prosecution can be considered frivolous. The objective unreasonableness of Plaintiff's arguments is considered as a discrete factor in the attorney fee inquiry and will be discussed separately below. Let it suffice for now to point out that Plaintiff herein has brought copyright claims based on evidence that it has previously admitted is insufficient and has included a negligence claim that has been rejected repeatedly, including a decision against AF Holdings in this district on the day before Mr. Trinh was served in the instant matter.

**2.   Motivation**

Plaintiff's motivation in bringing the lawsuit is another factor that District Courts should consider when deciding whether to award fees under the copyright act.  This factor likewise supports an award of fees in this case.  Plaintiff herein is not the creator of the work at issue. Instead, Plaintiff has ostensibly obtained the exclusive rights to distribute the work, though the individual that purportedly signed on its behalf has renounced any involvement.  Moreover, AF Holdings has previously admitted that it does not, in reality, distribute the works itself through any legitimate avenue.   Instead, AF Holdings business is devoted *exclusively* to filing BitTorrent lawsuits like the instant suit.  This fact was admitted by AF Holdings' 30(b)(6) deponent in the following exchange:

> Q:  Have they recognized any revenue through any sources other than litigation, for example, through legitimate licensing of it?
> A:  No.  The only source of revenue that AF Holdings will have with respect to its copyrights are if it increases in value.

(Hansmeier Dep. 21:12-18)

Based on the foregoing, it is difficult to believe that AF Holdings actual motivation is to deter infringement of its work, or any other purpose that aligns with the proper purpose of the Copyright Act.  Their business model is clear – obtain dubious grants of rights and proceed to file lawsuits.  This model does not comport with the legitimate goals of the Copyright Act.

As outlined previously, Plaintiff's *actual* motivation in bringing this suit (as well as hundreds of similar suits) is to pressure ISP subscribers, whether innocent or not, into paying dubious settlements in order to avoid the cost and embarrassment associated with defending yourself in federal infringement litigation involving pornographic works.  Indeed, Plaintiff's initial letter to Mr. Trinh specifically states that "you are not being directly accused of committing the infringement yourself," but nonetheless goes on to state that "I want to give you a chance to cooperate with us and **settle these claims prior to becoming entrenched in long and expensive litigation."**  See Exhibit J  at pg. 2.  This strategy has been quite successful, as this campaign has

apparently netted millions of dollars[4], despite the fact that neither AF Holdings nor Prenda Law Inc., had ever obtained a successful judgments on the merits of its claims. Unfortunately for Plaintiff, however, this motivation does not comport with the purpose of the Copyright Act and does nothing to forward its legitimate goals. As such, the second factor weighs in favor of a fee award to defendant.

### 3.   Objective Unreasonableness of Legal or Factual Arguments

The third factor to be considered when deciding whether to award fees is the objective unreasonableness of the losing party's legal or factual arguments. As described further below, Plaintiff's claims herein are unreasonable in both senses. As numerous courts have recognized, Plaintiff's decision to name Mr. Trinh as the infringer of its copyright, based solely on his status as ISP subscriber, is factually unreasonable. Moreover, Plaintiff's "Negligence" Cause of Action is legally unreasonable and has been rejected by every court that has considered it in the context of a motion to dismiss.

####    a.   Plaintiff Has Failed to Conduct an Adequate Factual Investigation Prior to Bringing its Copyright Infringement Claims

The fundamental infirmity of the copyright claims in this action, as in many of AF Holdings suits, is the Plaintiff's failure to conduct an adequate investigation prior to naming and shaming a defendant. This point was recognized in this court's decision to require an undertaking in this matter. Indeed, as noted above, AF Holdings and its counsel have recently faced increased scrutiny on this point, and have failed in each case to convince courts that they have conducted a reasonable factual inquiry before filing suit. Two cases in this district, *AF Holdings v. Botson,* 12-cv-2048; and *AF Holdings v. Hatfield,* 12-cv-2049 were discussed in Defendant's Reply re: Motion to Dismiss (ECF No. 36). To briefly summarize, each case involved defendants who

---

[4] See October 15, 2012 article from Forbes.com, "How Porn Copyright Lawyer John Steele Has Made A 'Few Million Dollars' Pursuing (Sometimes Innocent) 'Porn Pirates,'", available at http://www.forbes.com/sites/kashmirhill/2012/10/15/how-porn-copyright-lawyer-john-steele-justifies-his-pursuit-of-sometimes-innocent-porn-pirates/, last accessed on March 21, 2013.

were first accused of only negligence and, subsequently, accused of copyright infringement. In each case the Plaintiff's attempt to name the negligence defendant as the infringer were rejected, and each judge noted indicia of bad faith. See *AF Holdings v. Hatfield,* 2013 WL 97755 (N.D. Cal. Jan 7, 2013)(AF Holdings "conduct is at least suggestive of bad faith,"); *AF Holdings v. Botson,* 2012 WL 5426091 (N.D. Cal. Nov. 6, 2012)("the court is concerned that the proposed amendments are sought in bad faith...simply to keep the only identified defendant 'on the hook'").

Moreover, as described above, Plaintiff and its counsel have recently been Ordered to Show Cause why sanctions shouldn't be imposed pursuant to Rule 11 for, inter alia, their failure to conduct adequate pre-suit investigations. See Exhibit C at 5-7. Judge Wright's criticism of Plaintiff's methods applies equally to the instant case. Indeed, the insufficiency of Plaintiff's investigation is belied by its own pleadings. Plaintiff's Amended Complaint states without reservation that David Trinh is the infringer of its copyrights, with literally no further information to support that claim. Further, the Amended Complaint includes, as an alternative cause of action, the defunct negligence claim described further below. This claim is explicitly predicated on the allegation that a third party – not Mr. Trinh – has downloaded and shared the relevant work.

b.    Plaintiff's Negligence Claim is Fatally Defective and Has Been Repeatedly Rejected

In addition to the unreasonable factual investigation, Plaintiff has also pursued a negligence claim against Mr. Trinh that has been repeatedly rejected. As noted by this court in its Order Requiring an Undertaking, Plaintiff's negligence claim is "deeply flawed." Moreover, their cause of action has been specifically rejected by at least two judges in this district, including one dismissal on *the day before* the instant complaint was served. These dismissals recognized that the negligence cause of action suffered from multiple flaws, each independently fatal to its survival. See, e.g. *Liberty Media v. Tabora,* 2012 WL 2711381 (S.D.N.Y. July 9, 2012)("the negligence claim suffers from at least two problems, each independently fatal to its survival..."); *AF Holdings v. Hatfield,* 2012 WL 3835102 (N.D. Cal. Sept. 4, 2012)(dismissing negligence claim based on preemption and lack of legal duty); *AF Holdings v. Botson,* 2012 WL 4747170

1    (N.D. Cal. Oct. 3, 2012)(dismissing negligence claim based on preemption, lack of duty, and CDA

2    §230 immunity).

3        Indeed, to defendant's knowledge, every court that has considered the issue on a motion to

4    dismiss has determined that the claim is completely preempted by the Copyright Act, in addition

5    to other infirmities.   Nonetheless, Plaintiff refused to withdraw the cause of action following

6    request of the defendant and the operative complaint in this matter continued to assert that Mr.

7    Trinh was liable to AF Holdings, whether he shared the work himself or merely failed to prevent

8    someone else from doing so via his internet connection.   This fundamental premise has been

9    thoroughly rejected and Plaintiff's fundamental argument is, therefore, unreasonable from a legal

10   perspective.

11

12   **4.     Need in Particular Circumstances to advance Considerations of Compensation and
             Deterrence**

13        The final factor endorsed by the court in *Fogerty* is the "need in particular circumstances to

14   advance considerations of compensation and deterrence."   *Fogerty,* 510 U.S. 517 at 534 n.19.

15   This factor allows the district court to recognize the unique features of each case, and to award

16   fees when they are particularly necessary to compensate a prevailing party or deter a losing party

17   from pursuing similar conduct in future litigation.

18        The instant case provides a textbook example of particular circumstances which require an

19   award to advance considerations of both compensation and deterrence.   These circumstances have

20   been discussed at length.   This case is merely one part of an enormous litigation campaign, built

21   on coercing dubious "settlements" from ordinary internet subscribers based on objectively

22   insufficient evidence.   The success of this campaign does not depend on the strength of the claims

23   - indeed their merit is almost irrelevant.   The campaign depends on a healthy dose of shame,

24   delivered via a public outing on Prenda Law's website that often lingers long after the suit is

25   dismissed.  See Ranallo Declaration in Reply re: Motion to Dismiss and Exhibits (ECF No. 36-5).

26        More importantly, this campaign relies on the fundamental economic realities of federal

27   litigation to force defendants into "cost of defense" settlements.   A defendant in Mr. Trinh's

28

14

position, facing allegations that he knows to be untrue, must still make an incredibly difficult decision whether to pay the "settlement," or perhaps expend far more money attempting to defend themselves against embarrassing allegations in a public forum.  Even if an award of attorney's fees was guaranteed to a prevailing defendant, it would still take a courageous and principled defendant to mount a defense, and incur the financial costs and risks associated with this process.  Without the prospect of such an award, even a principled and courageous defendant must accept the near-certainty of significant financial loss in order to defend himself.  This reality has led the Seventh Circuit to recognize that "when the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong." *Assessment Technologies of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 437 (7th Cir. 2004).  Moreover, the few relatively few defendants, like Mr. Trinh, that have chosen to stand up for themselves and defend against Plaintiff's claims have done an invaluable service for countless internet subscribers that would have faced similar meritless accusations based upon fraudulent assignments.  As such, this court has a particular interest in compensating Mr. Trinh, and those similarly situated.

An award of attorney fees in the instant case likewise serves to deter meritless suits.  A plaintiff in AF Holdings position has no incentive to adequately investigate their claims if they face no consequences when their claims turn out to be false.   Indeed, the need for deterrence is particular important in the instant situation, where Plaintiff's litigation campaign depends upon high volumes of litigation.  As noted previously, AF Holdings *only* business is the filing of BitTorrent copyright lawsuits based on objectively weak evidence.  An award of prevailing party attorney fees to successful defendants is the strongest weapon against this shotgun approach to litigation, and the most effective way to force Plaintiff's to honestly evaluate the strength of its claims *prior* to naming and serving a defendant

.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**5.     The Degree of Success Obtained**

In addition to the four non-exclusive factors which were cited approvingly by the Supreme Court, the Ninth Circuit has frequently considered a fifth factor: the degree of success obtained by the prevailing party.  See, e.g. *Jackson v. Axton,* 25 F.3d 884, 890 (9th Cir. 1994); *Halicki Films, LLC v. Sanderson Sales & Marketing*, 547 F.3d 1213, 1230 (9th Cir. 2008); *Wall Data Inc., v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 787 (9th Cir. 2006).  In the instant case Defendant has obtained total success, as each and every cause of action has been dismissed with prejudice.  Thus, to the extent that this court considers the degree of success obtained as an additional factor in the attorney fee inquiry, this factor likewise weighs heavily in support of an award of fees in the instant case.

**C.     DEFENDANT'S HAS INCURRED $8425.00 IN REASONABLE ATTORNEY'S FEES**

As outlined more fully in the Declaration of Nicholas Ranallo and the Exhibits thereto, Defendant has incurred a total of $8425.00 in recoverable fees and costs.  The Ninth Circuit has adopted the Lodestar method for calculating reasonable recoverable attorney fees in situations like the instant case.  See, e.g. *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir. 1987). The Lodestar amount is calculated by multiplying the number of hours the prevailing party reasonably expends on the litigation by a reasonable hourly rate.  As summarized below and detailed more fully in the Ranallo Declaration,  $250/hour represents a reasonable hourly rate and defense counsel has reasonably expended 33.70 hours in defense of this action.  As such, the Lodestar amount for this matter is $8425.00.

**1.     Reasonable Hourly Rate**

The first step in the Lodestar inquiry is to establish a reasonable hourly rate for attorney services.  In the instant matter, $250 per hour represents a reasonable hourly rate for defense counsel's services.  This rate was previously deemed reasonable by this court, and was used as a basis for calculating the amount of the undertaking that was required. See ECF No. 23 at 3.  The

1   rate of $250/hour represents a conservative estimate regarding the prevailing rate for attorney

2   services in the Bay Area, as illustrated by a comparison with the Laffey Matrix and an additional

3   survey, a copy of which is attached hereto.

4          The Laffey Matrix, annexed to this motion as Exhibit K, is frequently used to determine

5   reasonable hourly rates for attorneys of varying levels of experience.  The Northern District of

6   California has previously endorsed the use of the Laffey Matrix in evaluating the reasonableness

7   of attorney fees in this district.  For example, in *HPL Technologies, Inc. Securities Litigation*,

8   Chief Judge Walker described the Laffey Matrix as a "well-established objective source for rates

9   that vary by experience," and used the Laffey rates to establish reasonable attorney fees in this

10  district.  *HPL Technologies, Inc. Securities Litigation,* 366 F.Supp.2d 912 (N.D. Cal. 2005).  In so

11  doing, the court recognized that the Laffey rate would tend to undercompensate attorneys in this

12  district, and noted that "adjusting the Laffey matrix figures upward by approximately 9% will

13  yield rates appropriate for the Bay Area." *Id.*

14         The Laffey Matrix sets the reasonable hourly rates for an attorney with 4-7 years

15  experience, like defense counsel herein, at $290/hour for work performed in 2012-2013.  Once the

16  9% upward adjustment for the Bay Area is figured in, the adjusted amount for this district would

17  be $316.10/hour.  As such, the rate of $250/hour chosen for the instant calculations should be

18  deemed reasonable.

19         In addition to the Laffey Matrix, defense counsel has also consulted a recent survey of

20  attorney billing rates that was published in the San Francisco Daily Journal to determine the

21  reasonable rate in the instant matter.  This survey, published on Friday, August 10, 2012, noted

22  that the average rate for an Associate in San Francisco law firms was $482/hour in 2012, up from

23  $449/hour in 2011.  A copy of the relevant chart is annexed to the instant motion as Exhibit L.

24

25

26

27

28

**2.      Hours Reasonably Expended**

As described in more detail in the Ranallo Declaration and Exhibit M hereto, Defendant has reasonably expended 33.70 hours in defense of the instant action.  These hours were primarily devoted to drafting Defendant's Answer, Motion for an Undertaking (ECF No. 20), Defendant's Motion to Dismiss (ECF No. 32), and the instant motion for fees.  Defendant has thus far prevailed on each motion that he has filed, and the hours expended on each were necessary to fully develop defendants arguments and respond to Plaintiff's opposition.

In light of the 33.7 hours reasonably expended in this litigation and defense counsel's reasonable hourly rate of $250/hour, defendant respectfully requests an award of attorney fees in the amount of $8425.

## IV.      CONCLUSION

For the reasons outlined herein, Defendant respectfully requests an attorney fee award in the amount of $8425 to reimburse for reasonable attorney fees for the time expended in his defense.  Mr. Trinh is the prevailing party in this action, based on the final dismissal of all claims against him and this court's Entry of Judgment on March 8, 2013.  Moreover, an analysis of the relevant factors governing an award of fees strongly supports an award of fees in the instant matter, pursuant to 17 U.S.C. §505 and this court's equitable discretion.

DATED: March 22, 2013              Respectfully Submitted,

NICHOLAS RANALLO, ATTORNEY AT LAW

By:_____/s/ Nicholas Ranallo_____

Nicholas Ranallo (Cal Bar #275016)
Attorney for David Trinh
371 Dogwood Way,
Boulder Creek, CA 95006
P: 831.703.4011
F: 831.533.5073
nick@ranallolawoffice.com

19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

THE UNDERSIGNED HEREBY CERTIFIES that on this 22nd day of March, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/          Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law