Nicholas Ranallo, Attorney at Law #275016
371 Dogwood Way
Boulder Creek, CA 95006
Telephone No.: (831) 703 - 4011
Fax No.: (831) 533-5073
Email: nick@ranallolawoffice.com
Attorney for Defendant David Trinh

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AF HOLDINGS, LLC., <br><br> Plaintiff, <br><br> v. <br><br> DAVID TRINH <br><br> Defendant. | Case No. 3:12-cv-02393-CRB <br><br> **REPLY MEMO IN SUPPORT OF DEFENDANT'S MOTION FOR ATTORNEY FEES** <br><br> Judge: Honorable Charles R. Breyer <br> Hearing Date: May 10, 2013 <br> Courtroom 6 – 17th Floor |

## I. INTRODUCTION – PRENDA PLEADS THE FIFTH

On March 22, 2013, Mr. Trinh filed the instant motion for attorney's fees. Mr. Trinh's motion outlined Plaintiff's litigation campaign in detail, including numerous details regarding Plaintiff's consistent pattern of insufficient investigations and the unrebutted allegations of fraud and forgery relating to the assignment in this matter. Plaintiff's opposition made no effort to rebut these charges. The reason for this is apparent – the claims are wholly accurate.

This conclusion was bolstered on April 2, 2013, during the Order to Show Cause hearing described in Mr. Trinh's original motion. On that date, all of the principal actors in this case were ordered to appear in the Central District of California to rebut the allegations of fraud, forgery, and inadequate investigation raised herein. These actors included Mr. Duffy, present counsel for the Plaintiff, as well as other individuals associated with Prenda Law and AF Holdings. Instead of rebutting the instant allegations, the relevant individuals availed themselves of their Fifth

Amendment right against self-incrimination. A copy of the relevant transcript is annexed hereto as Exhibit A. Mr. Duffy, present counsel for AF Holdings, likewise pled the Fifth with regard to his involvement in the enterprise (See Exhibit A at pg. 9, ln. 18-20).

In light of the events of April 2, it is no wonder that Plaintiff's response in this matter has avoided any discussion of the forged assignment or the pattern of insufficient investigations that led to imposition of an undertaking in the first place. Indeed, they cannot. As described further below, Plaintiff's response fails to address any of the factors that a court should consider when determining whether a fee award is appropriate. Instead, they argue that since Plaintiff fled the scene prior to reaching the substance of Mr. Trinh's defense, a fee award would not advance the purposes of the Copyright Act. Plaintiff's opposition offers no support for its position and, indeed, it is incorrect. Finally, Plaintiff argues that, should this court award fees, that it is entitled to a deduction in the amount because other defendants subsequently filed similar motions.

For the reasons outlined below, Plaintiff's arguments must be rejected. Mr. Trinh has prevailed in a copyright action that was brought without any factual support, based on an apparently forged assignment. Courts have frequently recognized that serial nuisance copyright suits must be deterred and recompensed by an award of attorney fees, and that such awards fully comport with the underlying purposes of the act. As such, Mr. Trinh is entitled to an award of attorney fees in this matter. Moreover, the previously requested amount of $8425 is both reasonable and necessarily incurred, and an additional four hours have been reasonably incurred in drafting the instant reply. See Ranallo Declaration, filed concurrently herewith. As such, Mr. Trinh respectfully requests that this court award $9425 in attorney's fees for his successful defense in this matter.

## II. LEGAL ARGUMENT

### A. PLAINTIFF'S RESPONSE DOES NOT ADDRESS THE FOGERTY FACTORS

Plaintiff's opposition begins by arguing that this Court should "discretionarily decline to award attorneys fees." The opposition correctly identifies the relevant factors, including

"frivolousness, motivation, objective unreasonableness (both in factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n.19 (1994)("the Fogerty Factors"). Plaintiff does not, however, make any attempt to apply these factors to the instant case. Instead, Plaintiff simply states that this action is not frivolous, improperly motivated, or objectively unreasonable. ECF No. 52 at 2. As described at length in Defendant's original motion for fees, each of these elements weighs in favor of a fee award.

First, it appears obvious at this point that Plaintiff's entire claim is premised upon a forged assignment of rights. Defendant's original motion included significant evidence calling the assignment into question, including a renunciation under oath by AF Holdings' purported signatory. Not only did Plaintiff's opposition fail to offer any evidence to rebut this evidence, but when called upon to discuss the issue, Plaintiff's counsel and Prenda Law/AF Holdings principals elected to plead the fifth, rather than discussing their roles in this fiasco. Notably, a court in a civil matter is free to draw reasonable inferences from a defendant (or, in this unprecedented situation, a *Plaintiff's)* decision to plead the fifth. See, e.g. *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976)("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.") As Justice Brandeis has noted, "Silence is often evidence of the most persuasive character." *United States ex rel. Bilokumsky v. Tod,* 263 U.S. 149 (1923). In the instant case, the most reasonable inference to be drawn is that AF Holdings, through its attorneys or other agents, have fraudulently executed the assignment in this matter by signing the name of Alan Cooper, an individual with no connection to the company or the instant case. This assignment forms the entire basis for AF Holdings claims of ownership – the first element in a prima facie case for copyright infringement. Even if the assignment was valid, as recognized in the Order requiring an undertaking, this suit was brought based upon evidence that Plaintiff's counsel previously admitted was insufficient to identify the actual infringer of its copyright. A lawsuit brought under these circumstances can rightly be considered frivolous, or at the very least objectively unreasonable in its factual

elements.

Additionally, as described in Defendant's original motion, Plaintiff has continued to forward a defunct copyright negligence claim in this matter, asserting that Mr. Trinh is liable for the infringements of another, without regard to the contours of secondary copyright liability. Plaintiff must have been aware of this deficiency, as a similar copyright negligence claim was dismissed as preempted by the Copyright Act on the day before Mr. Trinh was served with the instant complaint. Interestingly, Plaintiff's opposition states that it "still maintains that Defendant committed the actions alleged in Plaintiff's amended complaint." ECF No. 52 at 2. Plaintiff's arguments on this point must also be considered frivolous, or at least objectively unreasonable in its legal elements.

Plaintiff's motivation in bringing these suits, the third Fogerty Factor, was likewise discussed at length in Defendant's original brief. The motivation, quite simply, is to compel nuisance-value settlements en masse, without every proving any element of any of its claims. As the Central District of California has recognized with regard to similar BitTorrent pornography suits, "To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price...The federal courts are not cogs in a plaintiff's copyright-enforcement business model. The Court will not idly watch what is essentially an extortion scheme, for a case that Plaintiff has no intention of bringing to trial." *Malibu Media, LLC v. John Does 1-10,* 2012 US Dist. LEXIS 89286, at 8-9 (C.D. Cal. June 27, 2012). As the court aptly recognized in another matter, "litigating a nuisance-value case inherently has aspects of bad faith." *National Center for Jewish Film v. Riverside Films, LLC,* 2012 WL 6565893 at *2 (C.D. Cal. Dec. 14, 2012). As such, this factor also weighs heavily in favor of an award to Mr. Trinh.

The final Fogerty Factor, "the need in particular circumstances to advance considerations of compensation and deterrence" is perhaps the most important factor in this case. Mr. Trinh's position on this issue was, again, laid out in detail in his original motion. Plaintiff's only response to Mr. Trinh's argument was that further deterrence is unnecessary, since Plaintiff was deterred by the imposition of an undertaking. Plaintiff clearly misunderstands this factor. Although Plaintiff

may have been deterred from further pursuing this matter after it became clear that it would actually have to satisfy the ultimate judgment against it, the purpose of the fourth factor is to deter Plaintiffs from filing similar unreasonable and unsupported lawsuits. Plaintiff clearly was not deterred by the undertaking in this matter, which was issued on November 9th, 2012. Indeed, AF Holdings continued to file nearly identical suits in the days and months immediately following the November 9th Order. See, e.g. *AF Holdings v. Sandipan Chowdhury,* No. 1:12-cv-12105-JLT in the District of Massachusetts (filed November 12, 2012); *AF Holdings v. Matthew Burnell,* No. 1:12-cv-01256 in the Western District of Michigan (filed November 13, 2012); and *AF Holdings v. Michael Plumley,* No. 3:12-cv-01292 in the Middle District of Tennessee (filed December 12, 2012), to name just a few. Moreover, Plaintiff's response does not even attempt to address the particular need to compensate Mr. Trinh for his defense in this matter. For the reasons outlined in Defendant's original brief, the final Fogerty Factor weighs very heavily in favor of an award of fees in this matter.

**B.  AN AWARD OF FEES AND THE DEFENSE OF THIS ACTION FURTHER THE PURPOSES OF THE COPYRIGHT ACT**

A substantial portion of Plaintiff's opposition is devoted to the premise that, despite every Fogerty Factor weighing in favor of a fee award, Mr. Trinh's successful defense in this action does not further the purpose of the Copyright. Plaintiff's response takes too narrow a view of the act's purposes. Plaintiff's opposition cites to *Fogerty*'s statement that "The policies of the Copyright Act are furthered if a successful claim or defense increases public exposure to a creative work." Although this *was* the case in Fogerty, where an artist was essentially sued for plagiarizing himself, this is not the only way in which a successful defense and an award of fees can further the objectives of the act. As the Central District of California succinctly recognized, "While it is true that *one* of the goals of the Copyright Act is to discourage infringement, it is by no means the only goal of the act...the policies served by the Copyright Act are more complex, more measured than simply maximizing the number of meritorious suits for copyright infringement. Indeed, the primary objective of the Copyright Act is "not to reward the labor of authors, but "to promote the

Progress of Science and useful Arts." *Seltzer v. Green Day, Inc.,* 2011 WL 5834626 at *2 (C.D. Cal. 2011), citing *Feist Publications, Inc.,, v. Rural Telephone Svc. Co.,* 499 U.S. 340, 349-50 (1991).

In the instant case, Plaintiff's combined allegations stand for the proposition that an individual internet subscriber is responsible for any and all infringements committed via his wireless internet signal, whether or not the subscriber actually infringed any copyrights. The implications of this position are staggering, and would essentially re-write principles of secondary liability in copyright law. Moreover, any judicial adoption of this position would seriously undermine free access to the internet, as well as effectively eliminating the availability of open wireless internet and wi-fi "hotspots," including those offered by municipalities, businesses, and the Northern District of California courts[1]. The proliferation of unfettered internet access in recent years has done more to advance the copyright act's goals of increasing the public access to all forms of creative works than perhaps any other development in the entire history of U.S. copyright law. Counsel for the defendant has tremendous admiration for John Fogerty's work, but it can hardly be argued that assuring public access to "The Old Man Down The Road" represents as positive and as pervasive a benefit to the public as guaranteeing continued proliferation of the internet, with all of its attendant benefits, without fear of liability for simply having a wireless signal.

Moreover, the Supreme Court has recognized that it is "peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants **who seek to advance** a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Fogerty,* 510 U.S. 517, at 527 (emphasis added). In the instant case, Mr. Trinh's sought to clearly delineate the contours of secondary liability under the act and its case law, as well as the

---

[1] Notably, the Northern District of California's website (www.cand.uscourts.gov/wifi) states that the district is "pleased to announce that free wireless public internet access is now available to persons doing business with the court in all Northern District court locations...Wi-Fi makes it possible for users to connect to the public interent using the wireless technology used in most laptops. If users are able to connect to a typical home or business Wi-Fi system, they can connect to the court Wi-Fi." Last Accessed 4/11/13.

preemptive effect of the act on state law claims seeking to expand secondary liability. Moreover, Mr. Trinh's defense of the direct infringement claims would have added a great deal of clarity regarding the modicum of proof required to sustain a direct infringement claim based solely upon IP address identification.

The fact that Plaintiff has fled the scene before these issues were fully decided provides no reason to deny fees in this case. As the Supreme Court's statement highlighted above clearly demonstrates, a defendant must only "seek to advance" his meritorious defenses. Courts routinely award attorney's fees even following a Plaintiff's voluntary dismissal of its claims, as occurred in *Atlantic Recording v. Anderson* discussed below. As the 7th Circuit recognized, an award of fees is appropriate following a voluntary dismissal (without reaching the substantive merits). "[Defendant] obtained a favorable judgment. That this came about when [Plaintiff] threw in the towel does not make [Defendant] less the victor than it would have been had the judge granted summary judgment..." *Riviera Distributors, Inc., v. Jones,* 517 F.3d 926, 928 (7th Cir. 2008). Moreover, Plaintiff's opposition in this matter fails to recognize that, although the dismissal was the direct result of Plaintiff's failure to post an undertaking, the imposition of that undertaking followed an examination of the relative merits of the parties' claims and defenses. That examination revealed that "Plaintiff's current evidence of infringement is weak," and further, that the secondary liability claims were "deeply flawed." ECF No. 23 at 2.

Other courts, in extremely similar peer-to-peer infringement cases, have recognized that a fee award to a prevailing defendant does, in fact, further the underlying purposes of the Copyright Act. For example, in one case from this circuit, an individual accused of improperly downloading music successfully defended herself from direct infringement claims based, as herein, on a claim of pure innocence. See *Atlantic Recording Corp. v. Anderson,* 2008 WL 185806 (D.Or. 2008). Plaintiff eventually dismissed the claims "voluntarily", but not before the defendant was forced to incur significant costs. The court in *Anderson* noted that there was ample "reason to compensate defendant in this case. Her defense was primarily factual and not based on any developing legal theories. Though it did not help to clarify the contours of copyright law, her participation was

involuntary. Her factual positions were consistent, and her legal stances were reasonable..." *Id.* at *9.

The Plaintiff in *Anderson*, as herein, argued that a fee award was inappropriate since the merits were never reached. As the court notes however, the Plaintiff's view "provides too little assurance that a prosecuting party won't deem an infringement claim unsupportable until after the prevailing defendant has been forced to mount a considerable defense, and undergo all that entails, including the incurring of substantial fees." *Id.* The court in *Anderson* determined that "awarding her fees would serve the underlying purposes of the Copyright Act" *Id.* at *10, and ultimately awarded over $100,000 in attorney's fees for the successful defense.

Similarly, in *Capitol Records v. Foster*, a successful peer-to-peer infringement defendant was awarded substantial attorneys fees following a successful defense. Notably, as herein, the Plaintiff forwarded the defunct theory that the defendant was liable "solely on the fact that she maintained an Internet account which a member of her household utilized to infringe the Plaintiff's copyright" *Capitol Records v. Foster,* 2007 WL 1028532 at *3 (W.D. Okla., 2007). The court in *Foster* approvingly quoted the 7th Circuit's recognition that a copyright defendant stands in a particularly precarious position since he "by definition receives not a small award, but no award, awarding fees becomes particularly important." *Id.* at *5, citing *Woodhaven Homes & Realty, Inc. v. Hotz,* 396 F.3d 822,824 (7th Cir. 2005). The court noted that "[W]ithout the prospect of such an award, the party might be forced into a nuisance settlement, or deterred all together from exercising his rights." *Id.* The court goes on to note that, like here, "Her only alternative to litigating...was to capitulate to a settlement for a violation she insists she did not commit. Such capitulation would not advance the aims of the Copyright Act..." *Id.*

C. **DEFENDANT'S REQUESTED FEES ARE REASONABLE AND NECESSARILY INCURRED**

As a final point, Plaintiff's opposition argues that the fees requested in this matter are excessive because "Defendant's counsel filed the same formulaic motion for undertaking in two other Northern District of California cases involving Plaintiff." ECF 52 at 4. Plaintiff's argument is wholly without merit. First and foremost, the motion for undertaking in this matter is by no

8

means "formulaic." Instead, the motion is directly tailored to the particular weaknesses in Plaintiff's claims and based upon substantial research into Plaintiff's prior cases, and was drafted specifically for this matter. A simple glance at Plaintiff's opposition to an undertaking (ECF No. 21) should satisfy this court that Plaintiff did not consider the motion "formulaic" at the time, but instead considered it to be a radical, unwarranted departure from existing law. See, e.g. ECF No. 21 at pg. 6 ("If Mr. Ranallo had spent his time conducting legal research, he would know that when suit is brought under a federal statute, a [federal district] court should not require security for expenses as distinguished from the more modest security for costs."). Plaintiff's attempt to now characterize the motion as "formulaic" is belied by its own response.

Second, the motion for an undertaking in this matter was drafted and filed in October, 2012, months before the filings in the other cases mentioned by Plaintiff. To be clear, Plaintiff is not arguing that the hours for the undertaking in this matter are unreasonable because the motion was based upon a prior motion, and therefore should have been completed more quickly. This argument would, at least, make sense. Instead, Plaintiff argues that the hours were not reasonably incurred in this matter because defense counsel subsequently drafted motions, in other matters, based upon the same authority that was cited herein. Plaintiff cites absolutely no support for this novel proposition, and it would not comport with the purpose of a fee award. Mr. Trinh could not hope for any discount based upon the fact later motions, in different cases, cited the same authority as his own. As such, there is simply no reason for Plaintiff's deduction in this case.

Finally, Plaintiff's opposition ignores the significant differences between the motion filed herein and those filed in *Navasca* and *Magsumbol*. The subsequent motions are by no means boilerplate reproductions of the motion herein, and include significant further facts regarding Plaintiff's forgeries and fraudulent representations. Plaintiff's argument for dividing the hours in this matter by three assumes that the subsequent motions could be drafted and filed with *no additional time expended*. Even if this court were to accept Plaintiff's premise, that the total hours spent on obtaining an undertaking should be divided evenly among the matters, it would still be necessary to include the hours spent in *Navasca* and *Magsumbol* before making such a division.

Plaintiff has not attempted to do so, instead arguing that the defendant should only be reimbursed for 5 hours on the motion that led directly to the dismissal of its meritless claims.

As described in Defendant's original motion and detailed further above, the requested amount of $9425 represents a reasonable rate of reimbursement for the hours reasonably expended herein.

### III. CONCLUSION

Mr. Trinh is undoubtedly the prevailing party in this action. Plaintiff's claims are both legally and factually defective, as Plaintiff's prior counsel has admitted and this court has recognized. Plaintiff's motivation – seeking nuisance value settlements – is improper and this court has a strong interest in awarding fees in order to deter future meritless suits, and to compensate the defendant for standing up where so many have capitulated. For the reasons detailed in Defendant's Motion for Attorney Fees and further highlighted herein, Mr. Trinh respectfully requests an award of $9425 in compensable attorney's fees pursuant to 17 U.S.C. §505.

Respectfully Submitted,

DATED: April 12, 2013          NICHOLAS RANALLO, ATTORNEY AT LAW

By: _____/s/ Nicholas Ranallo
Nicholas Ranallo (Cal Bar # 275016)
Attorney for David Trinh
371 Dogwood Way
Boulder Creek, CA 95006
(831) 703-4011
Fax: (831) 533-5073
nick@ranallolawoffice.com

**CERTIFICATE OF SERVICE**

THE UNDERSIGNED HEREBY CERTIFIES that on this 12th day of April, 2013, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system and served on all of those parties receiving notification through the CM/ECF system.

/s/ Nicholas R. Ranallo

Nicholas Ranallo, Attorney at Law